**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**RICK TSHUDY,**

        **Plaintiff,**

**vs.**                                                      **Civ. No. 03-644 LCS/KBM**

**JOHN E. POTTER,**
**POSTMASTER GENERAL,**
**UNITED STATES POSTAL SERVICE**
**AGENCY,**

        **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant's Motion for Summary Judgment, filed on August 2, 2004 as well as Defendant's unopposed Motion to Dismiss Plaintiff's Claim for punitive damages, filed July 9, 2004. (Def's. Mot. Summ. J., Doc. 25; Def's. Mot. Dismiss, Doc. 24). The United States Magistrate Judge, acting upon consent and designation pursuant to 28 U.S.C. § 636(c), and having considered the record, arguments of counsel, relevant law, and being otherwise fully advised, finds that the Motions should be **GRANTED**.

**I.**    **Background**

Plaintiff began working for the United States Postal Service ("USPS") in July 1999 as a Part-Time Flexible Distribution Clerk ("PTF Clerk") in Mescalero, NM. (Compl. ¶ 9, Doc. 1). Plaintiff was terminated on September 9, 1999 which was during his probationary period. (*Id.* at ¶ 13, Doc. 1). On October 28, 1999, Plaintiff filed a formal complaint with the USPS's Western Area Office ("WAO"). (Tshudy Dep., p. 40, ln 6-8, Def. Ex. 2, Doc. 27).

On October 1, 2001, the WAO issued its Final Agency Decision ("FAD") and found discrimination on the basis of physical disability. (FAD at 8, Def. Ex. 1, Doc. 27). The FAD required that the Albuquerque District of the USPS offer Plaintiff a PTF Clerk position "in the Mescalero Post Office or a substantially comparable position, retroactive to the date he was terminated in 1999 with all appropriate back pay and . . . [Plaintiff] will not be required to serve the usual probationary period." (*Id.*)  The FAD also required that the position be offered to Plaintiff within thirty days of the date of the decision. (*Id.*)[1]

On October 21, 2001, Raymond Montano, a Labor Relations Specialist for the USPS, offered Plaintiff a PTF Clerk position at the Mescalero Post Office. (Montano Decl. ¶¶ 1, 5, Def. Ex. 4, Doc. 27). Plaintiff was given until November 30, 2001 to accept or decline the offer. (*Id.*)

Plaintiff spoke to the Mescalero postmaster, Alice Diaz, who told Plaintiff that there was a PTF Clerk, Ralph Griffo, who worked in Mescalero but that he was temporarily working in Roswell at the time of Plaintiff's inquiry. (Tshudy Dep. p. 50, ln 20; p. 51, ln 11-16; p. 52, ln 3-12, Def. Ex. 2, Doc. 27). On November 6, 2001, Plaintiff, through counsel J. Robert Beauvais, Esq., sent a letter to Mr. Montano expressing a concern that Mr. Griffo held the only authorized PTF Clerk position in Mescalero and as such, Plaintiff had not received a bona fide offer as required by the FAD. (Montano Decl. Ex. A, Def. Ex. 4, Doc. 27). In response, Mr. Montano addressed a letter to both Plaintiff and Mr. Beauvais on November 16, 2001 stating that Plaintiff was "incorrect in [his] determination of the number of authorized positions. There are only two categories of employees within the Postal Service:

---

[1] In addition, Plaintiff was awarded $4,000.00 in compensatory damages and $3,500.00 in attorney fees; further, the Albuquerque District Office was required to post a notice at the Mescalero Post Office advising employees of the finding of discrimination and to conduct EEO training for the postmaster and managers involved in the decision to terminate Plaintiff. (Def. Ex. 1 at 9, Doc. 27).

Career and Non-Career. Mr. Tshudy is being offered a Career Position." (Montano Decl. Ex. B, Def. Ex. 4, Doc. 27). Plaintiff declined the offer because he believed that the Mescalero Post Office only had one PTF Clerk position, which Ralph Griffo held and therefore, the USPS was attempting to "double-fill" the position when it offered Plaintiff a PTF Clerk position. (Tshudy Dep. p. 45, ln 4-5, Def. Ex. 2, Doc. 27; Tshudy Interrog. 8, Def. Ex. 3, Doc. 27).

On November 20, 2001 Plaintiff filed an appeal with the Office of Federal Operations, Equal Employment Opportunity Commission (EEOC). (Notice of Appeal, Def. Ex. 5, Doc. 27). The sole issue on appeal was whether Defendant's offer of employment complied with the FAD. (Supplement to Notice of Appeal at 2, Def. Ex. 6, Doc. 27; Brief in Support of Appeal at 5, Def. Ex. 8, Doc. 27).

On May 17, 2002, while his appeal was still pending, the Albuquerque District Office offered Plaintiff a PTF Clerk position at the Mescalero Office. (Montano Decl. ¶ 11, Def. Ex. 4, Doc. 27). Meanwhile, Ralph Griffo had been permanently assigned to the Roswell Office in February 2002. (Montano Decl. ¶ 8, Def. Ex. 4, Doc. 27). Plaintiff accepted the offer and began working at the Mescalero Office in June 2002. (Montano Decl. ¶ 11, Def. Ex. 4, Doc. 27).

On March 4, 2003, the Office of Federal Operations, EEOC issued a decision stated that "until [Plaintiff] actually accepts the position and is able to show that he is receiving fewer hours than he did before the discrimination, [Plaintiff] fails to show that he has been harmed or that the agency's job offer was not a bona fide one. In light of our decision that the agency's offer was a valid one, [Plaintiff] is not entitled to back pay beyond the November 30, 2001 deadline for him to accept the position." (EEOC Decision at 2, Def. Ex. 7, Doc. 27).

On May 23, 2003, Plaintiff filed his complaint pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, alleging that Defendant's refusal "to resolve the adverse Agency decision was

3

done in bad faith and constitutes an act of discrimination against Plaintiff" and that Defendant's refusal "to negotiate a resolution of the disputed damages as instructed in the Agency decision which also [o]rdered Defendants to reinstate Plaintiff Tshudy constitutes an act of retaliation." (Compl. ¶¶ 21, 26; Doc. 1). Defendant filed his Motion for Summary Judgment on August 2, 2004 arguing that 1) Plaintiff's action is a civil action pursuant to § 2000e-16(c) and Plaintiff failed to exhaust his administrative remedies; 2) that even if he had exhausted his remedies Plaintiff has failed to show that he has a disability as defined by the Rehabilitation Act, and 3) if the Court considers Plaintiff's complaint as seeking enforcement of the FAD and does not consider it to be a § 2000e-16(c) action, then Plaintiff fails because the Court lacks jurisdiction (Def's. Mot. Summ. J., Doc. 25; Def's. Mem. Supp. Summ. J, Doc. 26).

## II. Standard

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment is proper when the pleadings, depositions, answers to interrogatories and admissions on file, as well as any affidavits "show that there is no genuine issue as to any material fact." *Id.* When applying this standard, the Court examines the record and reasonable inferences in the light most favorable to the non-moving party. *See Simms v. Oklahoma ex rel. Depot of Mental Health & Substance Abuse Serve.*, 165 F.3d 1321, 1326 (10th Cir. 1999).

The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

(quoting *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)). The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case. *See Celotex v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate a genuine issue for trial on a material matter. *See McGarry v. Board of County Comm'rs*, 175 F.3d 1193, 1198-1199 (10th Cir. 1999).

### III.   Analysis

#### A.   Enforcement of the FAD

Plaintiff's Complaint states, "The conduct of the U.S. Postal Service in singularly refusing to resolve the adverse Agency decision was done in bad faith and constitutes an act of discrimination against Plaintiff Tshudy" and "[t]he acts of Defendants to refuse to negotiate a resolution of the disputed damages as instructed in the Agency decision which also ordered Defendants to reinstate Plaintiff Tshudy constitutes and act of retaliation under the applicable law." (Compl. ¶¶ 21, 26, Doc. 1). Despite Plaintiff's allegations, Plaintiff plainly indicated at the Oral Argument on October 4, 2004 that he solely is seeking enforcement of the FAD. Further, in his Response to Defendant's Motion for Summary Judgment, Plaintiff specifically states "Plaintiff's action does not claim discrimination and retaliation. Count I states a cause of action for enforcement of the FAD and Count II state [sic] a cause of action for retaliation alleging the United States Postal Service made a fraudulent valid offer of employment which was a pretext to deny Plaintiff his relief he had obtained by the FAD." (Pl's. Mem. Supp. Resp. Mot. Summ. J. at 5-6, Doc. 31). To the extent Plaintiff is attempting to amend his Complaint through his Response to Defendant's Motion for Summary Judgment, the Court will not allow it. However, the Court notes that even if somehow the Complaint could be read as an enforcement action, as Plaintiff insists it is, Plaintiff has not introduced any evidence that would create

a genuine issue of material fact with regard to whether Defendant complied with the FAD. As such, Defendant's Motion for summary judgment must be granted.

In order for this Court to have jurisdiction over Plaintiff's enforcement action, there must have been an EEOC determination of non-compliance. *See Timmons v. White*, 314 F.3d 1229, 1231-1232 (10th Cir. 2003); 29 C.F.R. § 1614.503(g).[2] As noted above, in 2001, when Plaintiff filed an appeal seeking enforcement of the FAD, the EEOC found that Defendant *had complied* with the FAD when it offered Plaintiff his former position of part-time Flexible Distribution Clerk and gave Plaintiff until November 30, 2001 to accept the position. (EEOC Decision at 1-2, Def. Ex. 7, Doc. 27). The EEOC also noted, "[u]ntil [Plaintiff] actually accepts the position and is able to show that he is receiving fewer hours than he did before the discrimination, [Plaintiff] fails to show that he has been harmed or that the agency's job offer was not a bona fide one. In light of our decision that the agency's offer was a valid one, [Plaintiff] is not entitled to back pay beyond the November 30, 2001 deadline for him to accept the position." (EEOC Decision at 2, Def. Ex. 7, Doc. 27). Thus, on appeal the EEOC found that Defendant had complied with the FAD and anticipatory breach was not enough: Plaintiff would not be able to show non-compliance unless and until he assumed employment and was receiving fewer hours of work than before the discrimination. (*Id.*)

---

[2] Pursuant to 29 C.F.R.§ 1614.503(g), "[w]here the Commission has determined that an agency is *not complying* with a prior decision, or where an agency has failed or refused to submit any required report of compliance, the Commission shall notify the complainant of the right to file a civil action for enforcement of the decision pursuant to . . . the Rehabilitation Act and to seek judicial review of the agency's refusal to implement the ordered relief pursuant to the Administrative Procedure Act, 5 U.S.C. 701 *et seq.*, and the mandamus statute, 28 U.S.C. 1361, or to commence de novo proceedings pursuant to the appropriate statutes." 29 C.F.R. § 1614.503(g) (2004) (emphasis added).

The Court notes that because the Commission determined that Defendant had complied with the FAD, it obviously did not notify Plaintiff of the right to file a civil action for enforcement, which again enunciates that without a finding of non-compliance by the EEOC along with a notification to Plaintiff of his right to file a civil action, the court's jurisdiction is divested. (*See* EEOC Decision at 1-2, Def. Ex. 7, Doc. 27).

Finally, the Court takes note of Plaintiff's contention that Defendant should be equitably estopped from asserting that it made him a bona fide offer of employment. (Pl's. Mem. Supp. Resp. Mot. Summ. J. at 7-10, Doc. 31). Plaintiff's contention is without merit because the EEOC found that Defendant's offer was valid. (EEOC Decision at 2, Def. Ex. 7, Doc. 27). Further, the Tenth Circuit has noted, "Courts generally disfavor the application of the estoppel doctrine against the government and invoke it only when it does not frustrate the purpose of the statutes expressing the will of Congress or unduly undermine the enforcement of the public laws." *FDIC v. Hulsey*, 22 F.3d 1472, 1489 (10th Cir. 1994). Assuming the doctrine of equitable estoppel is applicable to the USPS in this instance, the Court notes that Plaintiff has not demonstrated that equitable estoppel should apply because he has not shown that (1) Defendant knew the facts; (2) Defendant intended that its conduct would be acted upon or so acted that Plaintiff had the right to believe that it was so intended; (3) Plaintiff was ignorant of the true facts; (4) Plaintiff relied on Defendant's conduct to its injury; and (5) the government engaged in "affirmative misconduct." *See id.* On November 6, 2001 Plaintiff, through counsel, expressed concern that Defendant's offer of employment made in November 2001 was not in compliance with the FAD because Mr. Griffo held the only authorized PTF Clerk position in Mescalero and as a result, Defendant was in effect attempting to double fill the position. (Montano Decl. Ex. A, Def. Ex. 4, Doc. 27). However, in a letter addressed to Plaintiff and dated November 16, 2001, Mr. Montano, a Labor Relations Specialist for the USPS, stated that Plaintiff was "incorrect in [his] determination of the number of authorized positions. There are only two categories of employees within the Postal Service: Career and Non-Career. Mr. Tshudy is being offered a Career Position." (Montano Decl. Ex. B, Def. Ex. 4, Doc. 27). This correspondence does not indicate that

Defendant misrepresented the facts nor does it show affirmative misconduct on the part of Defendant. Plaintiff's contention that equitable estoppel should be applied is wholly without merit.

In sum, the Court lacks jurisdiction because the EEOC did not make a finding of non-compliance with the FAD, which is a prerequisite to an enforcement action. *See* 29 C.F.R.§ 1614.503(g); *Timmons*, 314 F.3d at 1231-1232. Finally, Plaintiff has not demonstrated that equitable estoppel applies in this instance. *See Hulsey*, 22 F.3d at 1489. Plaintiff has not introduced any evidence that would create a genuine issue of material fact with regard to whether Defendant complied with the FAD. As such, Defendant's Motion for summary judgment must be granted.

**B.     Civil Action Pursuant to 42 U.S.C. § 2000e-16(c)**

Despite Plaintiff's clear contention that his Complaint is seeking enforcement of the FAD, the Court finds that an analysis of Plaintiff's complaint as an action pursuant to 42 U.S.C. § 2000e-16(c)[3] is useful especially since the language contained in the Complaint does not appear to be seeking enforcement of the FAD. (*See* Complaint ¶¶ 21, 26, Doc. 1). That is, Plaintiff's complaint is seeking more relief than the EEOC awarded, and in such circumstances, the Tenth Circuit has determined that Plaintiff is not seeking an enforcement of the FAD and is in fact pursuing an action under 42 U.S.C.

---

[3] A complaint under the Rehabilitation Act can be reviewed pursuant to 42 U.S.C. § 2000e-16, a provision of Title VII of the Civil Rights Act. 29 U.S.C. § 794a(a)(1) (2004). The Rehabilitation Act states in relevant part,

> [t]he remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16), including the application of sections 706(f) through 706(k) (42 U.S.C. 2000e-5(f) through (k)), shall be available, with respect to any complaint under section 501 of this Act [29 USCS § 791], to any employee or applicant for employment aggrieved by the final disposition of such complaint, or by the failure to take final action on such complaint. In fashioning an equitable or affirmative action remedy under such section, a court may take into account the reasonableness of the cost of any necessary work place accommodation, and the availability of alternatives therefor or other appropriate relief in order to achieve an equitable and appropriate remedy. *Id.*

§ 2000e-16(c).[4] *See Timmons*, 314 F.3d at 1232 (10th Cir. 2003) (Rehabilitation Act). Further, with such an action, the "'district court is not bound by the administrative findings.'" *Timmons*, 314 F.3d at 1234 (quoting *Haskins v. Depot of the Army*, 808 F.2d 1192, 1199 (6th Cir. 1987)).

Plaintiff states in his complaint, "[d]espite demand, the Postal service refused to pay the disputed pay portion of the award, interest and other disputed costs and made no effort to resolve the dispute." (Compl. ¶ 20). In his deposition, Plaintiff stated that he was seeking back pay from December 1, 2001 through June 16, 2002, which is the disputed amount to which Plaintiff is referring in his Complaint. (Tshudy Dep., p. 42, ln 8-11, Def. Ex. 2, Doc. 27). Plaintiff had received back pay from the date of his termination through November 31, 2001, which is the undisputed amount. (Tshudy Dep., p. 42, ln 12-15, Def. Ex. 2, Doc. 27). On appeal, the EEOC found that Defendant had complied with the FAD when it offered Plaintiff his former position of PTF Clerk and Defendant gave Plaintiff until November 30, 2001 to accept the position. (EEOC Decision 1-2, Def. Ex. 7, Doc. 27). As such, the EEOC ruled that Plaintiff was not entitled to back pay beyond November 30, 2001. (EEOC Decision at 2, Def. Ex. 7, Doc. 27). Because Plaintiff is seeking back pay beyond what was awarded in the EEOC's decision, he is seeking more relief that the EEOC awarded and, thus, is not seeking enforcement of the FAD. (*See* Tshudy Dep., p. 42, ln 8-11, Def. Ex. 2, Doc. 27; EEOC Decision at 2, Def. Ex. 7, Doc. 27). Further, Plaintiff alleges that Defendant's failure to give Plaintiff back pay

---

[4] 42 U.S.C. § 2000e-16(c) states in relevant part,

Within 90 days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a) of this section, or by the Equal Employment Opportunity Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section. . .may file a civil action as provided in section 2000e-5 of this title, in which civil action the head of the department, agency, or unit, as appropriate shall be the defendant. 42 U.S.C. § 2000e-16(c) (2004).

beyond November 30, 2001, as well as Defendant's failure to make Plaintiff a bona fide job offer, was in contravention of the FAD and that "The conduct of the U.S. Postal Service in singularly refusing to resolve the adverse Agency decision was done in bad faith and constitutes an act of discrimination against Plaintiff Tshudy" as well as an "act of retaliation." (Compl. ¶¶ 21, 26, Doc. 1). Neither the claim of discrimination nor the claim of retaliation, which were subsequent to the FAD, were presented to the EEOC. Again, it appears Plaintiff is seeking relief beyond that which the EEOC awarded and thus the complaint should be construed as an action under 42 U.S.C. § 2000e-16(c). *See Timmons*, 314 F.3d at 1232.

The Court lacks jurisdiction over Plaintiff's claims that Defendant discriminated and retaliated against him in carrying out the requirements of the FAD and that Plaintiff was entitled to additional back pay because he has failed to exhaust his administrative remedies. As the Tenth Circuit has noted, "[l]ike the requirements for suits under Title VII, the exhaustion of administrative remedies is a jurisdictional prerequisite for instituting a Rehabilitation Act cause of action in federal court." *See Woodman v. Runyon*, 132 F.3d 1330, 1341 (10th Cir. 1997) (citation omitted). Thus, Plaintiff cannot bring an action under the Rehabilitation act "based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue-letter." *Simms*, 165 F.3d at 1326 (citations omitted) (Title VII). While Plaintiff's original claim of discrimination when he was terminated has been exhausted, his claims that Defendant discriminated and retaliated against him in carrying out the requirements of the FAD and that he is entitled to additional back pay were not presented to the EEOC; thus they have not been exhausted and this court is without jurisdiction to entertain Plaintiff's claims. *Simms*, 165 F.3d at 1326; Montano Decl. ¶ 13, Def. Ex. 4, Doc. 27. Plaintiff claims no exception to the exhaustion doctrine, nor has Plaintiff introduced any evidence that

10

would create a genuine issue of material fact with regard to exhaustion. As such, Defendant's Motion for summary judgment must be granted.

Even if the Court had jurisdiction over Plaintiff's claims, because the Court reviews *de novo* claims pursuant to 42 U.S.C. § 2000e-16(c), Plaintiff must allege a prima facie case of discrimination and retaliation and because he has failed to do so, Defendant must be granted summary judgment. As noted above, with complaints pursuant to 42 U.S.C. § 2000e-16(c) "the district court is not bound by the administrative findings." *Timmons*, 314 F.3d at 1234 (quoting *Haskins*, 808 F.2d at 1199). That is, the "'court's inquiry is not limited to or constricted by the administrative record, nor is any deference due the agency's conclusion.'" *Timmons*, 314 F.3d at 1324 (quoting *Doe v. United States*, 821 F.2d 694, 697-98 (D.C. Cir. 1987)). Thus, the WAO's finding that the USPS discriminated against Plaintiff when it terminated him in violation of the Rehabilitation Act is granted no deference. *See Timmons*, 314 F.3d at 1324 (quoting *Doe v. United States*, 821 F.2d at 697-98); FAD at 8; Def. Ex. 1, Doc. 27. Plaintiff has not alleged a prima facie case of Defendant's discrimination or retaliation in carrying out the requirements of the FAD. In order to make a prima facie case of discrimination Plaintiff must show that 1) he is disabled within the meaning of the Rehabilitation Act; 2) that he is otherwise qualified; that is he can perform the essential functions of the job with or without reasonable accommodation; and 3) that Defendant took an adverse action against him solely because of his disability. *Woodman*, 132 F.3d at 1338. In order to make out a prima facie case of retaliation under the Rehabilitation Act[5], Plaintiff must prove by a preponderance of the evidence that "'he engaged in protected [activity], that the

---

[5] "While the Rehabilitation Act itself does not provide a cause of action for retaliation, the regulations promulgated pursuant to the Act do. The regulations provide that '[n]o person shall be subject to retaliation for opposing any practice made unlawful by . . . the Rehabilitation Act or for participating in any stage of administrative or judicial proceedings' under the Act." *Starr v. Shalala,* 4 Am. Disabilities Cas. (BNA) 451 (D.N.M. 1995) (quoting 29 C.F.R. § 1614.101(b)).

employer was aware of this activity, that the employer took adverse action against the plaintiff, and that a causal connection exists between the protected activity and the adverse action.'" *Starr v. Shalala,* 4 Am. Disabilities Cas. (BNA) 451 (D.N.M. 1995) (quoting *Sands v. Runyon*, 28 F.3d 1323,1331(2nd Cir. 1994); *see also Kendall v. Watkins*, 998 F.2d 848, 850 (10th Cir. 1993) (stating similar test for establishing prima facie case of retaliation in a Title VII case)).  Plaintiff has not alleged facts setting out a prima facie case of Defendant's discrimination or retaliation in carrying out the requirements of the FAD.  As such, if the Court construes Plaintiff's complaint as an action arising pursuant to 42 U.S.C. § 2000e-16(c) summary judgment must be granted in favor of Defendant.

### IV. Conclusion

Upon review of the evidence presented on Defendant's Motion for Summary Judgment, this Court has determined that Defendant's Motion for Summary Judgment is well-taken and it is **GRANTED**. (Def's. Mot. Summ. J., Doc. 25).  The Court also finds that Defendant's unopposed Motion to Dismiss Plaintiff's Claim for punitive damages, is well-taken and it is **GRANTED**.  (Def's. Mot. Dismiss,  Doc. 24).

**IT IS SO ORDERED.**

**A SUMMARY JUDGMENT CONSISTENT WITH THIS OPINION SHALL ISSUE.**

_____
**LESLIE C. SMITH
UNITED STATES MAGISTRATE JUDGE**